## Zook's Appeal.   Coffman's Estate.

1. If the sale of a decedent's estate made by order of the Orphans' Court for the payment of debts produces more than the debts, the law does not require the one-third of the balance to remain a charge on the estate for his widow.

2. Where such sale was made by the administrators, subject to the payment of the widow's dower "yearly and every year during her life," the proceeds of sale represented the estate of the decedent, leaving the purchaser subject to account to the widow for her dower only: and she was not entitled to the interest of one-third of the proceeds.

March 7th 1867.  Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ.  READ, J., sick.

Appeal from the decree of the Orphans' Court of *Chester county*, distributing the balance in the hands of the administrators, &c., of Joseph Coffman, deceased.

The decedent died about the year 1811, leaving to survive him a widow, Phebe, and five children, Isaac Coffman, Joseph Coffman, Eliza, afterwards intermarried with John McVeagh, who is since deceased, Mary Ann Coffman, and Barbara Ann, since intermarried with John Patterson; letters of administration were issued to Phebe Coffman, the widow, and to David Zook; the widow married Joseph Hall.  Under an order of the Orphans' Court the real estate was sold by the administrators for the payment of debts; on the 4th of June 1821 they filed their final account, which was confirmed on the 9th day of October, of the same year, leaving a balance in their hands due the estate of $4234.26, consisting wholly of the proceeds of the real estate.  Phebe Hall, the widow of Joseph Coffman, survived her last husband Hall, and died December 13th 1861.

In November 1862, Isaac Z. Coffman and others, children of Joseph Coffman, petitioned the Orphans' Court of Chester county to compel David Zook, the surviving administrator, to pay them $1411.75, one-third of the balance appearing on the administration account, with interest from the widow's death.

The administrator answered, stating the facts of the sale and conveyance to Hall, "that the balance due the estate was reduced by expenditures, subsequently made by the widow, for the support and maintenance of the said minors, with the sanction of their guardians, to the sum of $3744; that it was agreed and understood between the said guardians, the administrators, and the said Joseph Hall, that the above amount, $3744, should be secured upon the said real estate by mortgage to the said guardians;" "that the mortgage of October 1st 1822" (stated in Judge Haines's report), "was given accordingly, and that no part of the money ever came to his hands;" and "the agreement and understanding among all parties at the time was that the said guardians assumed

[Zook's Appeal.]

all responsibility for the management and safety of the said money, and released the said administrators from all liability therefor."

Judge Haines was thereupon appointed auditor.

The additional facts cannot be stated more briefly than they have been in the following extracts from the auditor's report:

"It is hardly necessary to state that two-thirds of this sum (the balance of the account) was payable presently, and the remaining third at the death of the widow, with interest to her during life, and it is the one-third of the balance of the estate payable at the death of the widow, which is in controversy.

"It further appears that on the 30th of April 1816, Henry Coffman was the guardian of Mary Ann Coffman; Jacob Neiler of Isaac Z. Coffman and Eliza Coffman, and Henry Zook, Jr. of Barbara Coffman and Joseph Coffman, all these children being then minors. No part of the one-third falling due to the heirs at the death of the widow, it is said, has been paid.

"The records of the court show that the real estate of the said Joseph Coffman, deceased, was sold to Thomas Bodley by the administrators above named, was conveyed to him by deed dated March 28th 1818; and that he conveyed the same land, by deed of the same date to Joseph Hall, at that time intermarried with Phebe, the widow of Joseph Coffman. Each of these deeds contains the following clause:

"'Subject always to the payment of the dower of the aforesaid Phebe Hall, yearly, and every year during the term of her natural life due, owing or arising out of the said premises, and payable to the said Phebe, by reason of the intestacy of her late husband, the aforesaid Joseph Coffman, deceased.'

"On the 1st day of October 1822, Joseph Hall executed a mortgage to Jacob Neiler, Henry Zook, Sr., and Henry Zook, Jr., guardians of the minor children of Joseph Coffman, which was recorded, December 7th 1822, reciting three bonds given by the said Joseph Hall, as follows: to Jacob Neiler, for the use of Isaac Coffman and Eliza Coffman, minors, the sum of $1497.60, to Henry Zook, Sr., for the use of Mary Ann Coffman, a minor, the sum of $748.80, and to Henry Zook, Jr. for the use of Barbara Coffman and Joseph Coffman, minors, the sum of $1497.60. This mortgage covered the same tract of land, reciting the deed from Bodly to Hall, and subject to the dower, as in the clause of the deeds before mentioned.

"Two of these bonds were produced before your auditor: one to Henry Zook, Sr., 'guardian for Mary Ann Coffman, one of the minor children of Joseph Coffman, deceased,' conditioned for the payment 'to Henry Zook, Sr., for the use of Mary Ann Coffman,' of $748.80, in one year after the date.

"On the back of this bond is a receipt, as follows: Received October 1st 1822, of Henry Zook, Sr., guardian of Mary Ann Coffman, the sum of one hundred and eighty dollars, it being for

boarding, clothing and tuition for Mary Ann Coffman, in full up to October 1st 1822.

"$180.                           (Signed)   JOSEPH HALL."

" Witness present :—ISAAC COFFMAN."

" The other to Henry Zook, Jr., guardian for Barbara Coffman and Joseph Coffman, two of the minor children of Joseph Coffman, deceased, conditioned for the payment to Henry Zook, Jr., for the use of the said Barbara and Joseph Coffman, of $1497.60, in one year after date.   On the back of this bond are the following endorsements :

" ' Received, October 1st 1822, of Joseph Hall, of the within bond, two hundred and seventy dollars, for the use of Barbara Coffman, minor.'

$270.

" ' Received, October 1st 1822, of Joseph Hall, of the within bond, two hundred and seventy dollars, for the use of Joseph Coffman, minor.'

$270.

" ' For full value received I do hereby assign, transfer and set over the within bond or obligation, and all moneys due and to become due thereon, unto John Patterson and Joseph Coffman, their respective heirs, executors, administrators and assigns, not holding myself liable for the payment of the same, the losses, if any, and the recovery thereof to be wholly at the risk of the said John Patterson and Joseph Coffman, their heirs and assigns.'

" Witness my hand and seal, the thirty-first day of October, Anno Domini 1838.                     HENRY ZOOK."   [SEAL.]

" In relation to the first above mentioned bond, on a separate piece of paper, is found the following receipt:

" ' July 26th 1834, received of David Zook a bond, given by Joseph Hall to Henry Zook, the elder, now deceased, who was guardian of Mary Ann Coffman, one of the minor children of Joseph Coffman, deceased, bearing date the first day of October one thousand eight hundred and twenty-two, conditioned for the payment of seven hundred and forty-eight dollars and eighty-one cents, and payable in one year after date, with lawful interest, for the use of Mary Ann Coffman, with a receipt attached to the said bond bearing even date therewith, for one hundred and eighty dollars, signed by Joseph Hall, as a receipt in full against the said minor to that date.

MARY ANN COFFMAN."

" Another bond, recited in the mortgage, as having been given by Joseph Hall ' to Jacob Neiler, for the use of Isaac Coffman and Eliza Coffman, minors, in the sum of $1497.60,' was not produced before your auditor : but the facts shown infer its existence.

[Zook's Appeal.]

" The petitioners, or such of them as were present, to wit: Isaac Z. Coffman, John Patterson (who had been intermarried with Barbara Coffman, she being deceased), Mary Ann Coffman, Eliza McVeagh, formerly Eliza Coffman, and Joseph Coffman, were called by the surviving administrator and testified before your auditor. Their testimony generally was in relation to the existence of bonds given to their guardians, and is not specially important, except as to Isaac Z. Coffman and Eliza McVeagh, who had for their guardian Jacob Neiler, and who testified respectively that they had never seen or heard of a bond.

" At the date of the conveyance to Hall of the real estate mentioned in this report, the children were all minors, living at the homestead with their mother and step-father. It would seem that from this period some four years elapsed before the positive adjustment between the parties interested was made, when, on the 1st day of October 1822, the parties hereinafter named presumed to be present, the following instruments of writing were severally executed: mortgage from Hall to guardians of children, dated October 1st 1822; bonds from Hall to two of the guardians of children, of same date; receipts for money paid by Hall on the bonds respectively, of same date.

" In the mean time, to wit, on the 10th day of June 1821, Joseph Hall and Phebe his wife, executed two mortgages, one to Joseph H. Brinton, covering a tract of land belonging, as it has been stated, to Phebe the wife, in her own right, in the sum of $1333.33, the other to Thomas H. Brinton, covering the tract sold by Bodley to Hall, as well as the tract last aforesaid, in the sum of $3666. Both these mortgages were acknowledged in due form by Phebe the wife.

" The last-named mortgage, in 1828, was sued out, and the land sold under a levari facias, and purchased by the mortgagee for the sum of $3800, the real debt being $4159.98.

" David Zook, the surviving administrator at the commencement of these proceedings, is deceased.

" All the guardians of the minor children have died insolvent.

" The money raised by Hall on the Thomas H. Brinton mortgage would seem to have gone to the payment of prior mortgages, to wit: one to Joseph H. Brinton, for the sum above mentioned, covering the property of the wife, and one to Abiah Taylor for $2666.66, covering the Coffman property; as the administration account shows payment of these several sums to these parties respectively, and the mortgage to Abiah Taylor is transferred to Thomas H. Brinton.

" Under this state of facts it was contended by the counsel of the surviving administrator—

" 1. That the guardians accepted the bonds and money of Hall for the money due their wards, and thereby released the administrators.

" 2. That the real estate is subject to the widow's thirds.

" The counsel for the heirs contends that one-third of the balance on settlement of the account belongs to the children of Joseph Coffman, with interest from the death of the widow, which took place December 12th 1861.

" That the mortgage from Joseph Hall and Phebe Hall to Thomas H. Brinton, and the sale under that mortgage divested the dower interest of the widow, and that no interest remains in the land for the heirs of Joseph Coffman.

" That there was no arrangement such as that spoken of by the counsel of the surviving administrator, and that he is liable to the heirs.

" The several documents show that at the date of the instruments the parties or agents were all present, to wit: the purchaser of the real estate, the administrators and the guardians, and were actors in the transactions of the day. The payment or security of the balance of the estate was the question to be settled. What was the state of affairs when the parties met? By the clause in the deeds the administrators doubtless believed they had secured the one-third of the clear estate, to be paid at the death of the widow to the heirs, with interest to the widow during life, annually. No money, or but a trifle at least, was paid by the purchaser to the administrators; indeed, there is no proof of any payment at all, except what the receipts on the bonds indicate, and this was made to the guardian. Joseph Hall was married to one of the administrators, who had an equal right with the other administrator to confer in the adjustment of the estate. Under these circumstances the mortgage and bonds were given to the guardians, instead of being given to the administrators and transferred to the guardians. It is the opinion of your auditor that the guardians accepted the mortgage and bonds at the hands of the administrators as satisfactory security for the money belonging to the heirs, and thereby released the administrators from further responsibility."

The heirs excepted to this report.

The court (Butler, P. J.) set it aside, saying, in the conclusion of his opinion, " Injustice may possibly be done the surviving administrator by compelling him to pay now. But if he shall suffer from this cause it will be in consequence of carelessness on the part of himself or his fellows. It is the plain and well-understood duty of administrators and others, holding positions of trust and confidence, to take receipts and vouchers for the payment and disbursement of money intrusted to their care. And if they have not this usual evidence, they must come well armed with other satisfactory proof when they ask to be discharged from liability. Any relaxation of the strictness with which the courts hold such individuals to account, would result in serious mischief to those whose interests are intrusted to their care."

[Zook's Appeal.]

Judge Haines having died, the case was referred to Joseph Hemphill, Esq., as auditor, to take further proof, and report the same, with his opinion, and also to report distribution, if necessary.

Mr. Hemphill reported that there was nothing in the evidence taken by him that should change the decision of the court. He therefore reported distribution.

Exceptions were filed to his report on behalf of the administrator.

The report was confirmed by the court. The executors of the administrator appealed.

*W. Darlington*, for appellants.

*W. MacVeagh* and *J. S. Futhey*, for appellees.

The opinion of the court was delivered, May 13th 1867, by

AGNEW, J.—This is an attempt, after forty years have elapsed, to recover from an administrator one-third of the balance of an account settled in 1821 by him and the widow of the decedent, as co-administrators, on the ground that the money remained in their hands to answer the widow's interest in the real estate of the decedent. This is sought to be accomplished, not by proving an arrangement to this effect to remove the presumption of payment arising from lapse of time; but by inferring that this third stood in the relation of purchase-money charged upon real estate to answer the annual interest of the widow, and not falling due until her death. There is no evidence that any such arrangement was made in fact, nor proof of any acknowledgments made of its existence. Indeed there is not a trace in the evidence even of such a tradition, while it is distinctly denied on oath by the surviving administrator, who alleges that the balance of the account, after crediting what was due for the maintenance of the children, was secured by a mortgage and bonds to their guardians. The auditor says in his report, it is hardly necessary to say that two-thirds of this sum was payable presently, and the remaining third at the death of the widow, with interest to her during life. But this was evidently said by him not as a conclusion of fact from any evidence before him, but from the law as to the distribution of the residue of the proceeds of an Orphans' Court sale of the real estate of an intestate, and is in direct conflict with an important fact found by himself on the evidence, to be presently noticed.

The case went before the auditor, Judge Haines, a gentleman eminently fitted to examine and decide it, who after full investigation came to the conclusion that the mortgage and bonds taken to the guardians, in the year 1822, were accepted by them in full satisfaction of the balance stated in the administration account. His report was set aside by the court in an opinion, not founded

on any thorough analysis of the transaction and its inherent pro-
babilities, but upon general and somewhat vague grounds. The
second auditor, to whom the case was referred, did not undertake
to revise it upon its facts, but following the opinion of the court,
reported that there was nothing in the new evidence taken before
him to change the judge's conclusion.

The leading facts explain the transaction, and support the con-
clusion of the former auditor, and are in turn supported by the
intrinsic probabilities of the case. The sale by the administra-
tors to Bodley, who bought for Hall, the then husband of the
widow, who was an administratrix of the decedent, was made for
the payment of debts, and not under proceedings for partition.
The one-third of the proceeds of sale was therefore not required
by law to remain charged upon the estate. The next and con-
clusive fact which proclaims the character of the fund contained
in the administration account, is, that the sale was made subject
to the widow's dower, thus leaving her interest remaining in the
land, that interest being simply a life estate. This is conclusive
of the ownership of the proceeds of the sale. They represented
the entire estate of the decedent, and consequently of his heirs,
leaving the purchaser subject to account to the widow for her
dower only. Her dower being charged upon the land in the
hands of the purchaser, could not go into the proceeds of sale,
and therefore she was not entitled to the interest of one-third of
the proceeds; but they, after payment of the debt, belonged
wholly to the heirs. The purchaser by his bid, subject to her
dower, therefore paid the whole value of the estate less the value
of the dower. It is no answer to this to say that the administra-
tors had no right to make a sale in that way. It is the fact with
which we must deal, and this fact appears conclusively by the
subjection to dower contained in both deeds, one to Bodley and
the other to Hall, and in the mortgage given to the guardians.
There were good reasons for this mode. There was a large sur-
plus beyond the payment of debts, and the creditors had no inte-
rest to interfere; while Hall, for whom Bodley purchased, was
interested in keeping down the last payment by retaining the
widow's dower in the premises, of which he, as her second hus-
band, was entitled to enjoy the fruits. She also had the same
interest, for the purchaser was her husband, and she would remain
along with him in the possession of the land and in the enjoyment
of her estate.

Nor is the subjection of the sale to the widow's dower
the blunder of some ignorant scrivener. The language of the
clause of subjection is evidently that of a professional mind,
or of a skilful conveyancer. The two deeds containing this
clause are dated in 1818, whilst the mortgage bears date
four years later, and contains the same clause. This was
clearly the result of intelligent design. That the parties under-

[Zook's Appeal.]

stood what they were about is evident from the mortgages given by Hall and wife to Joseph H. Brinton, on the 10th of June 1821. There was no such clause of subjection in these, and Mrs. Hall joined in that one which covered the Coffman premises, manifestly to convey her own interest as the widow of Coffman, subject to which Hall had bought, and which he could not convey to Brinton.

Now when we come to examine the mortgage of Hall to the guardians of the heirs of Coffman, we find it precisely corresponding to these facts, and consistent with the nature of the proceeds of sale. It was clearly taken for the purpose of securing to the heirs the money coming to them. This money was the whole balance of the settled account, because it represented the residue of the price, less the widow's dower, left in the land. What was sold to Bodley according to the deeds (and in this respect the mortgage follows them) was the full value of two-thirds of the land, and the value of the other third less the value of the widow's life estate in it. Hence, when the guardians took the mortgage subject to the widow's life estate in one-third, they took it to secure just the estate which Hall had in the premises, to secure the residue of the price representing that estate, which was the estate of the heirs alone. The bonds were made payable absolutely in one year, representing therefore a present, and not a contingent, interest. This was just what the rights of the parties demanded. The widow's estate remaining in the land, she was not entitled to the interest on one-third or any part of the balance of the account. There was therefore no reason for leaving one-third of the balance out of the mortgage, or for suspending it during her lifetime. Thus the bonds and mortgage exactly consist with the sale and the terms of the deeds. But if the guardians knew they were taking the bonds and mortgage for the two-thirds only, as the petitioners contend, is it not remarkable they took no evidence of debt as to the other third? Is it not inconsistent with all our ideas of ordinary business habits that they should take a good security for a present collective debt, and leave another wholly unsecured to stand without any evidence of what was to become of it? If we accept the argument, this third was left standing on a mere settlement of an administration account for an indefinite and wholly uncertain term of life, which might outlast their own lives as well as their estates, as was the fact in this case. The widow lived forty years afterwards, while Neiler, one of the guardians, died many years ago insolvent, and the very bond he held for his wards is lost. Henry Zook, Sr., another guardian, is long since dead and insolvent, and Henry Zook, Jr., the third guardian, is insolvent, and has left the state. Clearly they had no motive thus to violate all business ideas by leaving one-third in this loose and

unsatisfactory way. It was not dependent on Mrs. Hall's life, for her dower had been detached by the sale and left in her own hands. If they did, is it not most strange that when Hall was sold out in 1828 and became insolvent, and after he had died years ago, no attempt was made by the heirs or any of them or any one for them to secure the third thus left loosely standing upon the administration account?

But we are told that the administrators believed they had secured this third upon the land, to be paid at the death of the widow, with interest to her in the mean time. How secured? Not by putting it into the mortgage where it should be, but, according to the petitioner's theory, by leaving it out. If the mortgage be for only two-thirds, as it is claimed, where is the security? It stands in the account only; not in the land or the mortgage. How does the subjection of the land to the dower secure it? That secures her estate, the equivalent of the interest; but not the principal. Where, then, is this principal, this money third belonging to the heirs? that was not secured, unless it was contained in the mortgage, where all the facts and probabilities of the case conspire to place it.

But it is said the sum in the mortgage does not correspond to the balance of the account. This balance was $4234.26; the mortgage was for $3744, or $490 less than the balance of account. The two-thirds of the balance are $2822, or $922 less than the mortgage. How is that increase of the mortgage over the two-thirds accounted for? Not by facts, but by suppositions. Is it the back interest? This would be but $320. Perhaps it arose from interest before the settlement and from the time of sale. But this would contradict the account. The omission to charge it in the account is the best evidence that it was otherwise settled, while we know that the children were kept and maintained upon the farm. On the other hand, the mortgage was $490 less than the balance of account. Here we have the positive oath of the surviving administrator that this resulted from a credit for the support of the minors made with the consent of their guardians; and his statement is corroborated by the nature of the circumstances and the probabilities of the case. Hall and his wife lived upon the farm and kept the children, and his receipt on one of the bonds shows that he was not keeping them for nothing. Intrinsically, too, it is more probable that the balance was reduced $490 by known causes than that the two-thirds were increased $922 by unknown causes inconsistent with the settled account and the nature of the mortgage.

It is said, however, by the court below, it was the duty of the administrators to take receipts and vouchers, and it is their own fault if they come without them. How do we know after forty years they did not take them? The acts for recording such

releases did not then exist. Death and time work sad havoc of our most important affairs—the very bond taken by Neiler is not to be found. They must come well armed with satisfactory proof (says the court) when they asked to be discharged. But they were discharged twenty years before this application—twice twenty years had rolled around since this balance was struck. Those who aver it to be a subsisting debt must come well armed to overturn this beneficent presumption of payment. They cannot rest their proofs upon mere conjectures and suppositions, opposed as they are by the nature of the account, the deeds and mortgages, and the probabilities of the circumstances themselves.

We are therefore of opinion there is nothing in this case to overturn the legal presumption that the balance of this account has been fairly settled, the oath of the party that the fact was so, and the finding of an intelligent and experienced auditor that such was the fact.

The decree of the Orphans' Court is therefore set aside and reversed, and the petition dismissed, and the petitioners are ordered to pay all the costs.