[Per curiam.

If a factor takes a note in his own name for a debt due to his principal, the note clearly belongs to the principal, in case such factor afterwards becomes bankrupt.]
The mail was robbed of a bank note, and an innkeeper came to the possession of it for a fair and valuable consideration, he shall hold it. 1 Burr. 453.
*540 The situation of the plaintiff and defendant is not equal in point of equity. Fairchild was the mere factor or agent of the plaintiff’s house. According to the case put by the other side, a factor settled in a store, with goods and money, by a foreign company dealing for them only and not for himself, would be considered as more than a creditor of such company. The goods and money would be deemed the property of the constituents. The factor’s private debts could not be paid out of the funds of his employers. The money in Smith’s hands as much belonged to the late house of Messier and Co. as the brig, flour, mules, &c. from the sales whereof it was produced. Their own ascertained property is merely claimed. The defendant claims to be paid his private debt due by Fairchild out of it, alleging it to be the property of the latter, whereas the fact has clearly been proved to be otherwise. The defendant, if he repays the money, which he has injuriously received, is only in statu quo.
Precedents of such suits as the present, have been called for. The plaintiff is not without them.
One received the note of a garnishee for 1200I. in satisfaction of a judgment obtained in the Mayor’s Court of London on a foreign attachment, and was afterwards on special circumstances, ordered to deliver up the note to be cancelled. H. Bla. 181, (note a.) In the case of British subjects and a bankruptcy, and one of the creditors sued an attachment against the bankrupt’s effects in the West Indies, and received his debt, an action by the assignees to recover back the money against the plaintiff in the attachment. H. Bla. 665. No objection was made, that such suit was not maintainable. And in Hunter, et al. v. Potts (4 Term. Rep. 183.) several cases of the same kind are stated. — In none of them, were the numerical monies identified, nor can * they be distinguished from the circumstances of the present L suit.
The plaintiff rests his case on another complete ground. Even if the goods and notes were Fairchild’s property, there was a complete appropriation of them to the use of Messier and company. The cause of Vance, Caldwell and Vance, meets this point fully. There this court left the intention of the owner of the effects to the jury, in derogation of the rights of the creditors under a foreign attachment, and a jury found an appropriation accordingly. These notes were left in Smith’s custody to go over to the partners in case of Fairchild’s death. When he died in North Carolina, the appropriation finally took place, and the notes vested fully in them, until they expressed their dissent.
Moreover, the verdict is consistent with the principles of substantial justice, and therefore a new trial will not be granted. 3 Salk. 644, 647, pi. 16. 648, pi. 18. 653 pi. 34, 35. 1 Burr. 397.
*541 This term, the judges proceeded to give their opinions.
M’Kean, C. J.
fully stated the circumstances of the case, and then observed, the defendant avails himself of the decree of á foreign court on a full hearing and defence made. The monies in Smith’s hands were thereby adjudged to be Pair-child’s property, at least to the extent of the now defendant’s claim on him. The great question is, whether we' can reexamine this foreign judgment in the present suit? If we can do it, Amery in another country may bring our decision again in question, and the litigation may thus never be at rest.
We have no right by law to assume the power of annulling the sentence of the court of an independent kingdom. We are bound to pay every respect-to the decrees of such courts, for the common safety and happiness of mankind. We are unacquainted with the laws and customs of the island of St. Eustatia; but there most probably must have been some tribunal to which Messier and Co. or Smith in their behalf might have appealed. In that' forum, advantage ought to have been taken of Fairchild’s death, and the point re-examined whether the notes belonged to the owners or captain of the brig Jenny. But as to us, the decree given and un-reversed is conclusive, and we have no power over it. We cannot possibly say, that in this instance the defendant has received the money under the judgment to the plaintiff’s use, and therefore I am of opinion, that a new trial should be granted.
Shippen, J.
Having delivered my sentiments at large in this *5421 -1 *acti°n from another bench, I mean now only to take notice of two new cases cited at the last by the plaintiff’s counsel, to shew that actions for money had and received, had been brought and supported against plaintiffs, who had recovered upon foreign attachments, to oblige them to refund to third persons, the money so recovered. These are the cases of Hunter v. Potts in 4 Term Rep. 182, and Sill et al. v. Warswick in H. Bla. Rep. 665. In both cases, the ruling principles appear to be, that all the parties were subject to the bankrupt laws of England, where every man is supposed to be consenting to every act of parliament; that there was an actual vesting of the property of the bankrupt in the assignees for the benefit as well of the plaintiffs in the attachments, as of all the other creditors; that the plaintiffs being jointly interested with the other creditors, and having a full knowledge of the whole transactions, took indirect measures to apply the whole property to their own use, in direct violation of the bankrupt laws, and his virtual contract with his fellow citizens. It was therefore consistent with every principle of law and justice, to make those plaintiffs answerable to the assignees of the bankrupt, for the money they had so unfairly recovered by attachments in America, and which the *542 assignees were entitled to as trustees, as well for the plaintiffs in the attachments themselves, as all the other creditors.
Lord Loughborough in delivering the opinion of the court in the latter case, is very careful to distinguish that case from the general case of a creditor, unconnected with the bankrupt laws, who recovers his debt in a competent court of justice in a foreign country. For although he is of opinion, that the operation of the proceedings under the bankrupt laws of England is such, as to vest the personal property of the bankrupt in every part of the world in the assignees, from the time of the assignment, yet he expressly declares, that a creditor in a foreign country not subject to the bankrupt laws of England, nor affected by them, obtaining payment of his debts by the judgment of a foreign court, and coming after-wards to England, could not be made liable to refund that debt. He goes further, and says, that if the claim of the assignees of bankruptcy had been communicated to the court, who decided the case abroad, and they had preferred the claim of the suing creditor to theirs, although he should think that determination wrong, yet it could not be revoked by another court of justice in England.
This principle fully reaches the case before us. Amery, a creditor of Fairchild, attaches his effects in a foreign country in the hands of Smith, the agent of Fairchild. Smith appears and makes defence, and no doubt communicated to the court the * circumstances, which lay the foundation of the r*KAo present plaintiff’s claim. The court adjudge, that the L money in the hands of Smith was the property of Fairchild, and compel him by their judgment to pay Amery his debt out of it.
Now if we should even be of opinion, that the money in the hands of Smith was the property of Messier and Co. and not of Fairchild, yet upon the principle of the case determined by Lord Loughborough, we have no power to revoke that judgment. The whole matter was before that court, and they determined the property to be Fairchild’s. The plaintiff in the attachment was wholly unconnected with the present plaintiff, and cannot upon any ground I know, be considered as receiving the money to his use. The more obvious recourse of the plaintiffs is to Fairchild’s estate, if he has left any; if not, it is more agreeable to law and justice, that the plaintiff should suffer by the default or failure of his own agent, than that a stranger recovering a fair debt in a regular course of justice, should refund the money to another stranger, with whom he had no manner of connection.
Yeates, J.
However hard the circumstances of this case may seem to bear on the present plaintiff, yet I am constrained to think, as well on general principles as the particular authorities cited, that he is not entitled to succeed in this suit,
*543 The defendant has recovered his debt against Eairchiid, by due process of law in the court of a foreign country, having competent jurisdiction. That decree remains in full force and unreversed to this day. Whatever errors or irregularities may be pointed out in the decision of that tribunal, this court is not competent to re-examine, revise or revoke it. The sentence of the foreign court is conclusive and binding on us, as it had competent jurisdiction of the subject matter. Parke on Insur. 403, 417. A contrary doctrine would be attended with the most pernicious consequence to society.
The objection also, taken from Cowp. 200, that the money having been paid to the defendant, a stranger to the plaintiff, bona fide, and on a valuable consideration, cannot now be brought back by the true owner, seems to me to be an additional, insuperable bar to the plaintiff’s recovery. We are not warranted in saying, that the money paid, has been received to the use of the plaintiff; and, on the whole, I think, that a new trial should be granted.
Smith, J.
stated the case minutely; and observed that the question was, whether the present action can be maintained? Or in other words, whether money recovered by the judgment of a court having competent jurisdiction, can .be recovered back in another court by an original suit?
*<=¡441 *A variety of cases has been adduced by the defend-I ant’s counsel, shewing, that the merits of a judgment can never be overhauled by a different court in a new original suit; that the preremptory sentence of a foreign court is conclusive on all parties, and other courts will pay due respect to such decisions; that the intermeddling with such decisions is an attack on the sovereign; and that this doctrine is very particularly ascertained, as to cases determined in foreign courts of admiralty. »
It has been objected, that most of these are prize causes, to which all the world are, or might have been parties, being prosecutions in rem. But it is not in the power of a plaintiff in a foreign attachment .to make it in personam, or other than as a prosecution in rem. He carries it on as such; and so it is considered in Dall. 264. 4 Term. Rep. 191. This takes away the force of the objection arising from the death of Fairchild. Nor is this regard to foreign judgments confined to sentences in prize causes or in courts of admiralty. Vid. Stra. 733. 2 Eq. Ca. Abr. 524.
Did the party in whose favour the foreign judgment was given, apply to the court to give effect to it, it would be only prima facie evidence, and we would examine into the grounds of it; but as he makes no such application, that judgment is binding on us, and therefore we cannot take notice of the death of Eairchiid. Smith had an opportunity of pleading it, and it is to be presumed, would have so done, had he supposed, or been advised, that it would have availed him. . He *544 contended that he had no effects of Fairchild’s in his hands, but it was adjudged by a competent court that he had.
H. Black. 665, and 4 Term Rep. 182, have been cited by the plaintiff to shew, that money of a bankrupt though recovered in a foreign attachment, has been recovered back in England by his assignees. But these cases do not apply to that before us. They arose on the bankrupt laws, and between British subjects residing in England, none of whom 'can gain a preference over bankrupt’s estates.
The ground of the decision in H. Black, was, that the plaintiff in the attachment, residing in England, had, contrary to the laws of England, founded that attachment, on an act done there by him, viz. an affidavit before the mayor of Lancaster. H. Black. 689, 694. And it is said, that a foreigner coming into England, after recovering such money on an attachment, could not be there sued. Ib. 693.
The foundation of the judgment in 4 Term Rep. was, that the party residing in England, knowing of the commission and assignment, transmitted an affidavit on which the attachment was * founded, to Rhode Island, to gain a prior- [-*545 ity. Therefore, as personal property is governed by the law, which governs the person of the owner, (H. Bla. 691, Vattel lib. 2, c. 7, § 85; c. 8, § 109, no, 4 Term Rep. 184,) these attachments instituted contrary to that law, were of no effect. But in the present instance, the now defendant was not restrained by any law from bringing the attachment. He did not bring it to attach the effects of Messier and co. but of Fairchild. A competent court has determined that the property attached was Fairchild’s, and we have no power to unravel, or overhaul its proceedings. Amery recovered the money bona fide for a just debt, and the now plaintiff cannot bring it back from him. Cowp. 200.
Admitting that the plaintiff has equal equity with the defendant, and that the decree of the foreign tribunal'was out of the question, where there is equal equity, possession fairly obtained, must prevail. Doug. 617.
The owners appointed Fairchild master of their vessel, and their agent. They are therefore to be affected by his misconduct, and that of his substitute, and not Amery, between whom and either of them, it is not alleged that there was any collusion.
There can scarcely be cited a stronger case, to prove that the decisions of foreign tribunals are conclusive, than those of Solomons v. Ross, H. Bl. 131, (note a,) and Jollet, et al. v. Deponthieu et al.; and Neale et al. v. Cottingham et al. Ib. 132, (note) upon duly attending to all the circumstances stated.
Several cases have been cited by the plaintiff’s counsel, (to which many more may be added, 2 Bl. Rep. 1221. 2 Wils. 307. 2 Burr. 665. 3 Salk. 361. 3 Bac. 26. 2 Bl. Rep. *545 1177. 2 Burr. 936. 1. Bl. Rep. 195. Lofft, 521. 4 Term. Rep. 468,) to prove, that where a verdict is substantially right, a new trial ought not to be granted. The law certainly is and ought to be so. But these cases do not apply to the motion before the court, because the verdict was entered with liberty 'to move for a new trial, and it was the understanding of both parties, that the point of law was to be argued before the court on this motion.
New trial awarded.
A new trial was afterwards had on the 22d March 1796, and a special verdict found at the instance of the plaintiff’s counsel. The court in the same term gave judgment for the defendant, without argument.