# Schall's Appeal.

## Gaul *versus* Lauer.

*Sheriff's Sales subject to Liens, when valid.—Statutory Dower not a Lien but an Interest in Lands.—Lien of Mortgage subsequent thereto, not discharged by Sale on Junior Encumbrance.*

1. Though the general rule is, that in the absence of express stipulations to the contrary, a sheriff's sale discharges all prior liens against the title, yet where the conditions defining the liens to which a sale was subject, were in writing and were expressed in the sheriff's deed, the court will not relieve the purchaser from any part of his bid, but will enforce the contract of sale.

2. A widow's statutory dower is not to be treated as a *lien on land*, but as an *interest in it.* It is an estate that is given by the intestate laws, and is unchanged by the Acts of Assembly relating to partition.

3. Kurtz's Appeal, 2 Casey 465, qualified.

APPEAL from the Common Pleas of *Berks county.*

This was an appeal by Nelly Schall (who was the widow of Peter Lamm), from the decree of the Common Pleas, distributing the proceeds of the sheriff's sale of real estate of Peter Gaul.

The material facts of the case are these :—

Peter Lamm died intestate in 1853, being the owner in fee of 247 acres of land, leaving a widow, Nelly Lamm, and issue three children, of whom Nathan D. Lamm was one. In 1854 proceedings in partition were had in the Orphans' Court on said land,

and the same was appraised at $15,559.60.  On the 7th of April 1854, Nathan D. Lamm accepted the land at the valuation, it was ordered and adjudged to him by the court, and he entered into a recognisance to the other heirs for their proportional parts of the valuation-money, one-third of which was to remain charged upon the premises during the life of the widow, she to receive the interest thereof annually.  On the 3d of April 1857, the other children entered satisfaction on the recognisances for their two-thirds of the valuation-money then due and payable.

Nathan D. Lamm and wife, by deed dated and acknowledged the 3d of April 1857, recorded April 7th 1857, conveyed the said 247 acres of land to Peter Gaul, "for and in consideration of the sum of $5186.54, charged as the widow's dower, and the sum of $11,220.21, now paid," and "under and subject to the dower payable as aforesaid."  The receipt at the bottom of the deed is for "the sum of $11,220.21, which, with the dower when paid, will be in full of the consideration-money therein mentioned."

On the same day Peter Gaul gave to Nathan D. Lamm a bond and mortgage on the land for $3000 and interest, which was recorded on the 1st of October 1858.

On the 28th of May 1857, Peter Gaul gave to William Lauer his bond and a mortgage upon the land for the payment of $1000, with interest, which was duly recorded on the 1st of June 1857. This mortgage was the first lien upon the property after the recognisance in the Orphans' Court.

Judgment was recovered against Peter Gaul on the 6th of August 1858.  Other judgments were afterwards recovered against him.

A *scire facias* was sued out on the mortgage given to Nathan D. Lamm, and judgment recovered against Peter Gaul on the 21st of May 1859, for $3641.60, upon which a *levari facias* issued on the 18th of July 1859.  The sheriff sold the land to Hiram S. Getz, Charles Rick, and Abraham Graeff, for $7725, "*subject to the payment of a dower of* $5186.54, and arrears of interest, and *mortgage of William Lauer of* $1000, *and interest thereon.*"

The conditions of sale were in writing, and were signed by the defendants, who acknowledged their bid under their hands and seals, subject as above; the sheriff so returned the property sold.

Exceptions were filed to this sale by the purchasers, but the court, on hearing, dismissed the exceptions and confirmed the sale.

On motion, the court permitted the sheriff to amend his return according to the facts; whereupon the sheriff returned the property sold, subject to the payment of dower of $5186.54, and arrears of interest, and a mortgage of William Lauer of $1000, and interest thereon, paying into court $7634.20.  The sheriff's deed

was made subject to the same conditions. Mrs. Schall, by her counsel, moved for a rule to take out of court $702.28, arrears of interest due on her one-third part under the proceedings in partition. Similar rules were applied for by judgment-creditors, pending which George G. Barclay, Esq., was appointed by the commissioner to distribute the fund.

In his report he distributed to Mrs. Schall $622.38, being the amount of two years' interest due to her prior to the sheriff's sale, and divided the balance of the fund among the subsequent judgment-creditors.

In the same report, and on the ground that the court might hold on the authority of Tower's Appropriation, 9 W. & S. 103, and Stackpole *v*. Glassford, 16 S. & R. 163, referred to in Mather *v*. McMichael, 1 Harris 305, that the widow must look to the land, or the purchasers who took it subject to her arrears of interest; he made a second distribution, leaving out her claim entirely, and distributing the whole fund to the lien-creditors, who were subsequent to Lauer's mortgage.

Exceptions were filed by judgment-creditors to the first distribution, which were sustained by the court below (JONES, P. J.), distribution No. 2 adopted, and the report confirmed absolutely. The case was then removed into this court, as above stated, where the decree of the court below was assigned for error.

To November Term 1859, William Lauer sued out a *sci. fa.* against Gaul on his mortgage, against which the court permitted the sheriff's vendees to come in and take defence. In this case the defendants contended that the sheriff's sale extinguished the mortgage of Lauer, and that therefore he could not recover. The court below (JONES, P. J.) directed the jury to find in favour of the plaintiff, which was accordingly done. Judgment being entered thereon, the defendants sued out a writ of error, and assigned as cause for reversal the instruction of the court below, directing a verdict for plaintiff.

The two cases being alike in principle, were argued, considered, and decided together.

*J. Hagenman* and *John Banks*, for the appellant, Mrs. Schall, and for Gaul, defendant in error, argued that the dower was a charge on the land sold. The interest due at the time of sale was also a charge. The purchasers took and now hold the land subject to said dower, and all the interest that may accrue and become payable after the sale. But arrears of interest due and payable before the sale are to be paid out of the proceeds of sale as a first lien : Shertzer's Executors *v*. Herr, 7 Harris 34.

The appellant's claim to interest has been denied her by the court, and the reason assigned is, that the sheriff had sold and incorporated into his return and conditions of sale, that the land was

sold "subject to the payment of a dower of $5186.54, and arrears of interest." The sale was one made by the law. The sheriff was but an agent to make the sale. He could not dictate other terms than those directed by law. He had no power to fix liens and to pass the title subject to them. The validity of liens is not a matter within his province to judge of; nor is he, in point of intelligence, always competent to decide upon them. Therefore he has no concern with these matters. It is an error in him to clog the sales of land with conditions other than the law prescribes. The purchaser should be left to decide these things for himself, without any interposition of the sheriff, and when the proper time arrives the courts will decide them.

The sheriff cannot bind others by any conditions he may deem proper to impose, either to promote the interest of one or to prejudice the interest of another. The appellant was no party to any conditions made by the sheriff. She was not consulted about them, and never assented to them. Her rights were secured by positive statute law. The land was her security before the sale. After the sale the proceeds of it was her security for arrears of interest then due and payable. To this security she looked. At the earliest moment she presented her claim to the court. She has presented it at all stages of the proceedings. She clings to it here, in this court, believing that the law is to make distribution, and not the sheriff.

The conditions of sale are not binding upon the appellant. She does not now, and never did relinquish her rights to have her arrears of interest out of the proceeds of sale. Her right is a vested right—by the wise and salutary provisions of the law —guarantied to her in the most imposing form. Can the sheriff divest that right? We trust not. Let him observe the requirements of the law in the discharge of his official duties, and parties will have less trouble, and vested rights will be more duly regarded.

Where is she to look for her money if it is denied her here? Not to the land, for it has passed from her grasp. Not to the sheriff, for he will have disposed of the fund according to the decree of the court. It is said she must look to the purchasers. Who says so? She never said so. The sheriff said so. This cannot bind her without her consent. She claims the right to make her own contracts. She protests against being bound by contracts to which she is no party. To thus bind her would be the exercise of a despotic power which is unknown to our law, and an act of tyranny to which she is unwilling to submit.

The appellant is unwilling to take the purchasers for her money. They owe her nothing. She will not take them as her debtors. She never agreed to do so. Her money was secured by law. The amount was raised for her by due process of law.

She insists that this money shall be distributed by law.  She will not consent that the sheriff shall usurp this trust.  Shall the law or the sheriff distribute this money ?

It is not in the power of the sheriff, by presenting his terms of sale, to affect the rights of lien-creditors to the proceeds; he is the mere agent of the law in effecting the sale : Devine's Appeal, 6 Casey 348; Umbehauer *v.* Aulenbach, 3 W. & S. 259; Reigle *v.* Seizer, 1 Penna. Rep. 340 ; Toombs' Appeal, 10 Harris 312.

2. Where a mortgage-lien is prior to all other liens upon the same property except other mortgages, ground-rents, and purchase-money due to the Commonwealth, the lien of such mortgage shall not be discharged or affected by a sale by virtue of a *venditioni exponas :* Act of 6th April 1830, § 4, Purdon's Digest 232.

The mortgage in this case was not prior to all liens as provided for in said act, and therefore by the sale it was discharged. In the act the terms that will preserve the lien of the mortgage are specifically enumerated.  This dower and arrears of interest is not one of them.  It is not a mortgage, a ground-rent, or purchase-money due the Commonwealth.  Therefore the lien of the mortgage was discharged by the sheriff's sale, unless something was done to continue it.

It is contended that the conditions of sale signed by the purchasers, and the return of sale by the sheriff, keep up the lien of the mortgage.

The case of Ziegler's Appeal, 11 Casey 173, was taken by the court as authority for holding that the lien of the mortgage was not discharged.

In that case the purchaser, on condition that the mortgage should continue a lien, assumed to pay the mortgage and confessed judgment on it.  This appears to have put the case at rest. He never demurred to its payment, and therefore others claiming through him were bound by it.

In the present case the purchasers objected to the confirmation of the sale.  They resisted the confirmation to the last.  The court forced the deed upon them against their wishes, and in opposition to their most earnest and vigorous resistances.  In this opposition the defendants united.  Had the sale been set aside, all trouble would have been avoided.  But the sale was confirmed, the land was forced upon them.

Under these circumstances the purchasers ought to hold the land discharged of the mortgage altogether.

*J. S. Livingood* and *Henry W. Smith*, for defendant in error and for appellees.—By the written condition of the sheriff's sale; the acknowledgment of the purchasers under their hands and

[Schall's Appeal.  Gaul *v.* Lauer.]

seals; the sheriff's return to the writ; and the sheriff's deed to the purchasers; they purchased expressly subject to one-third of the valuation-money and the arrears of interest, at which the property was appraised in the proceeding of partition in the Orphans' Court, and to William Lauer's mortgage of $1000 and interest; and the question is, are they bound to comply with these conditions, or are they to keep the property at half its value, and the creditors lose their money?

Lauer's mortgage was the first lien after the Orphans' Court recognisance, two-thirds of which was paid, the widow's third only remaining.

A widow's dower as ascertained by proceeding in partition under the Act of 1794, is an estate in law, and not a lien within the meaning of the Act of the 6th of April 1830, for the protection of the lien of mortgages: Ziegler's Appeal, 11 Casey 173.

The opinion in this case is contrary to the case of Kurtz's Appeal, 2 Casey 465, and shows clearly that it ought not to be sustained. That case admits, however, that it has been repeatedly decided that the widow's interest is real estate, and cites the authorities; while Ziegler's Appeal puts it beyond all question.

In the case in hand, the sheriff's sale was under the second mortgage, and by the 2d section of the Act of 6th of April 1830, Pamphlet Laws of 1829–30, page 294, the lien of the prior mortgage is not affected.

The practice of sheriffs in selling property discharged from or subject to liens, has not been uniform; it will, however, be found that both before and since the Act of the 6th of April 1830, that where a sale has been fairly made subject to a lien, which would otherwise have been paid out of the purchase-money and extinguished, the courts have held the purchaser bound to pay the lien. But where no lien existed, and the sheriff attempted to create a lien to the injury or prejudice of the lien-creditors, or render the lien of the creditor or interest of the purchaser uncertain, the law is otherwise: Febiger *v.* Craighead, in a note, 3 Rawle 117, and referred to in 11 Casey 184, 185; Tower's Appropriation, 9 W. & S. 103; Towers *v.* The Tuscarora Academy, 8 Barr 297; Stackpole *v.* Glassford, 16 S. & R. 163, decided in 1827; Barnet *v.* Washerbaugh, 16 S. & R. 410, decided in 1827; Guerney's Executors *v.* Alexander, 14 S. & R. 257, decided in 1826; Ziegler's Appeal, 11 Casey 173; Riegel *v.* Hepner, 2 Penna. R. 340; Fretz *v.* Heller, 2 W. & S. 397; Aulenbach *v.* Umbehauer, 8 Watts 48, 3 W. & S. 259.

The widow's arrears of interest on the third of the valuation-money in partition, due and payable at the time of a sheriff's sale, are to be paid out of the purchase-money: Lauman's Appeal, 8 Barr 473; Kline *v.* Bowman, 7 Harris 24; Shertzer *v.* Herr,

7 Harris 37. And so with the arrears of a widow's annuity: Reed *v.* Reed, 1 W. & S. 235; Mohler's Appeal, 5 Barr 418. The same rule applies to ground-rent in arrear: Bantleon *v.* Smith, 2 Binney 146; Devine's Appeal, 6 Casey 348.

So a mortgage which is not the first lien, or a legacy charged on real estate or a judgment against a former owner of land, is to be paid out of the purchase-money; but if the sheriff sells expressly subject to such liens, the rule is otherwise, and the purchaser holds subject to such encumbrances.

A sheriff's sale, subject to a fixed lien, is necessarily subject also to a prior encumbrance: 6 Casey 348; Swarr's Appeal, 1 Barr 92; Lauman's Appeal, 8 Id. 473; Mix *v.* Ackla, 7 Watts 316; The Northern Liberties *v.* Swain, 1 Harris 113; Tower's Appropriation, 9 W. & S. 103; Devine's Appeal, 6 Casey 348.

In Berks county it was not supposed that the Act of the 6th of April 1830 altered the practice of selling subject to or discharged of liens, except as to mortgages provided for in the act; and soon after, the court adopted a rule, simple in itself, that has repeatedly prevented a sacrifice of property, and apprised lien-creditors as well as purchasers accurately of what was sold, and what was to be paid, and how. Upon the application to set aside the sale, the court thought the rule of court complied with, that the sale was a fair one, and therefore confirmed it, notwithstanding the purchasers objected, and filed exceptions to its confirmation. Nelly Lamm never made any objection at any time.

The rule is as follows: " In all cases of sheriffs' sales, if there be a lien or liens charged upon the property proposed to be sold, which is or are not to be discharged by the sale, it shall be the duty of the sheriff to state specifically, in his conditions of sale, that the property is to be sold subject to such lien or liens, and, as nearly as can be ascertained, the nature and amount of the same, and if the sheriff shall neglect *so to do*, it shall be a sufficient cause to set aside the sale; and it shall be the duty of the sheriff to set forth, in his deed to the purchaser, the liens to which the property shall have been sold subject, in and by the condition of sale.''

The opinion of the court was delivered, July 25th 1861, by

LOWRIE, C. J.—The argument presented, in the opinion of the court, in Zeigler's Appeal, 11 Casey 182, very clearly requires the affirmance of this decree, and saves us from any further discussion of this case, in that aspect of it. This case is even much clearer than that one, for here the conditions defining the liens to which the sale was subject, were in writing, are expressed in the sheriff's deed, and have the sanction of a rule of practice of the Common Pleas of thirty years' standing. This decision makes

the purchaser pay exactly according to his purchase, instead of relieving him from $622 of his bid, and leaves the widow her claim unimpaired.

But the argument in the present case, urges upon us a review of the reasoning in Kurtz's Appeal, 2 Casey 465, and we have been urged to it before. We are very sure that the decision in that case did exact justice to the parties; but the reasoning in which it is founded has ceased to satisfy us. We think now that the widow's statutory dower ought not to be treated as a lien on land, but as an interest in it, and that for this reason, also, the decree must be affirmed; because then the fixed lien immediately succeeding it, prevents the discharge of even the accrued interest.

We have examined the old Acts of Assembly, 19th April 1794, § 22, 7th April 1807, § 6, and 14th April 1828, § 5, relative to the assignment of the widow's share in partition, and compared them with the Orphans' Court Act of 29th March 1832, §§ 41—43, and are satisfied that none of them change the character of her estate given by the intestate acts in lieu of dower, but only prescribe the form of assigning it. What her estate really is, is expressed in the Intestate Act of 8th April 1833, § 1:—" One-third part of the real estate for the term of her life," and the form in which the law assigns it leaves its character unchanged.

In some cases the amount at which her interest was valued in partition has been incautiously called a lien, when it was not important to distinguish accurately; but at other times it is not improperly so called, that is, when the heirs are claiming it after the widow's death: 2 Penna. R. 358; 7 W. & S. 275. And in cases where accuracy of denomination was important, it is described as "an interest issuing out of land of the nature of a rent-charge," and liable to sale by execution: 12 S. & R. 12; 3 Barr 69; 3 W. & S. 458; or, "a defined interest in her late husband's lands—a freehold estate," passing to a new husband by marriage in the same manner as dower, and liable to execution for his debts (before the Act of 1848): 11 Harris 163. It is an estate that is given by the intestate laws, and the partition laws do not change it, and on this ground, also, the decree is affirmed.

Decree affirmed at the costs of the appellant.

GAUL v. LAUER is a writ of error raising the same question.
Judgment affirmed.