## Gourley *versus* Kinley.

1. A widow cannot take the land of her husband at the appraisement under proceedings in partition.

2. Where a widow's portion is laid off to her, she has a life estate in it as land.

[Gourley *v.* Kinley.]

3. When the husband's land is accepted at the appraisement or sold, she has a life estate not in any specific portion of the land, but in an equivalent share of the rents and profits of the whole measured by the interest on her share of its value, ascertained by appraisement or sale.

4. In either form of assignment, she has an estate in the land, and by force of the statute it vests in her *eo instanti* the husband dies.

5. The widow's interest in her husband's land is not like dower at common law.

6. Dower will not lie for the widow's share of land of which her husband died seised.

7. The widow may maintain dower if the land is in possession of one who claims adversely to the heirs and denies her right, and is not amenable to the Orphans' Court.

8. When the husband dies seised and in possession, she must have her share assigned under the partition acts.

9. Since the Act of April 21st 1846, the common-law courts have concurrent jurisdiction in partition with the Orphans' Court.

10. The widow cannot join with the heirs in ejectment for her husband's land.

11. The widow cannot bring ejectment for her interest in her husband's land.

12. An heir cannot before partition maintain ejectment against a widow in possession of land of which her husband died seised.

13. Kurtz's Appeal, 2 Casey 465, Zeigler's Appeal, 11 Id. 189, remarked on; Seider *v.* Seider, 5 Whart. 208, recognised.

October 25th 1870.   Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Error to the Court of Common Pleas of *Armstrong county :* No. 65, of October and November Term 1870.

This was an action of ejectment by James Kinley, by his guardian James Hunter, against Harrison Gourley and Sarah Gourley, brought to June Term 1868.

James Kinley, being the owner of the land in controversy, died intestate, leaving a widow, Sarah, defendant (who afterwards married Harrison Gourley, the other defendant), and a son, the plaintiff, for whom James Hunter was appointed guardian by the Orphans' Court. The wife continued in possession of the land.

The plaintiff having given the foregoing facts in evidence, the defendant moved for a nonsuit which was refused.

The defendant then submitted these points :—

" 1. Under the evidence in this case there cannot be, in any event, a recovery of more than the undivided two-thirds of the land.

" 2. There being no evidence of an ouster in this case, the verdict must be for the defendant.

The court (Buffington, P. J.) answered both points in the negative.

The verdict was for the plaintiff.

The defendant having removed the case to the Supreme Court, assigned the answers to their points for errors.

[Gourley *v.* Kinley.]

*D. Barclay*, for plaintiffs in error, cited Act of April 3d 1833, § 1, Pamph. L. 315, Purd. 362, pl. 1; Bachman *v.* Christman, 11 Harris 163; Shaupe *v.* Shaupe, 12 S. & R. 9; Lancaster Co. Bank *v.* Stauffer, 10 Barr 398; Lefever *v.* Whitmer, Id. 505; Evans *v.* Evans, 5 Casey 277; Galbraith *v.* Fenton, 3 S. & R. 359; Bonslaugh *v.* Bonslaugh, 17 Id. 361.

*E. S. Golden*, for defendant, cited Pringle *v.* Gaw, 5 S. & R. 536; Bratton *v.* Mitchell, 7 Watts 113.

[During the argument Judge Sharswood referred to Seider *v.* Seider, 5 Whart. 208.]

The opinion of the court was delivered, February 9th 1871, by
Williams, J.—This was an ejectment for 135 acres of land in Cowanshannock township, in the county of Armstrong. It was shown by the evidence given on the trial that James Kinley died in the fall of 1849 intestate, seised of the land in controversy, leaving a widow, Sarah, now intermarried with Harrison Gourley, the defendants in the ejectment, and the plaintiff, his only son and heir at law, surviving; that James Hunter was appointed his guardian, on the 27th of March 1868, by the Orphans' Court of Armstrong county; and that the writ in this case was duly served on the defendants. This is the substance of the plaintiff's evidence. The defendants, having given no evidence, requested the court to charge the jury: 1st. That under the evidence there cannot be, in any event, a recovery for more than the undivided two-thirds of the land. 2d. There being no evidence of an ouster in this case, the verdict must be for the defendants.

The court answered both points in the negative, and instructed the jury that the plaintiff, having shown a good title, must recover, and that the widow's remedy is in the Orphans' Court.

The assignments of error embrace the answer of the court to the defendants' points, and virtually raise but one question: Is the plaintiff, under the evidence, entitled to recover the land of which the intestate died seised? In other words, can the heir at law turn the widow out of possession by ejectment before any proceedings have been had for the partition or appraisement of the estate?

The Intestate Act of the 8th of April 1833 provides that "where such intestate shall leave a widow and issue, the widow shall be entitled to one-third part of the real estate for the term of her life;" and "where such intestate shall leave a widow and collateral heirs or other kindred, but no issue, the widow shall be entitled to one-half part of the real estate, including the mansion-house and buildings appurtenant thereto, for the term of her life." Under the provisions of the Orphans' Court Partition Act of the

[Gourley v. Kinley.]

29th March 1832, the widow's portion, whether there be one or more lineal descendants, or collateral heirs only, may be assigned to her by metes and bounds, if the estate can be divided without prejudice: Bishop's Appeal, 7 W. & S. 251; McCall's Appeal, 6 P. F. Smith 363.   But where the estate cannot be divided among the lineal descendants and the widow, or among the collateral heirs and the widow, without prejudice to, or spoiling the whole, it may be appraised and finally sold, if no one, entitled to take it under the provisions of the act, will accept it at the appraisement. The widow cannot take the estate at the valuation put upon it by the inquest: Painter v. Henderson, 7 Barr 48.   But if it is taken by one of the heirs, the act provides in substance that the sum at which her purpart is valued, or if the estate is sold, her share of the purchase-money shall be and remain charged upon the premises, and the interest thereof shall be annually and regularly paid to her, in lieu and full satisfaction of her dower at common law, to be recovered by distress or otherwise as rents are recoverable.   What the precise nature of the widow's purpart or share is, when thus ascertained and charged on the land, is a question which has been much discussed, and in regard to which the authorities are somewhat discordant, owing to the different aspects in which the question has been presented.   In Shaupe v. Shaupe, 12 S. & R. 9, and in Thomas v. Simpson, 3 Barr 60, it is declared to be "an interest arising out of the land, in all respects of the nature of a rent-charge," and subject to levy and sale upon execution.   In Miller v. Lindsay, 3 W. & S. 456, it is said that "primarily and essentially her estate is a rent issuing out of the land, and therefore an incorporeal hereditament, ranking as real estate."   In other cases, as in Medlar v. Aulenbach, 2 Penna. R. 355, and Hise v. Geigar, 7 W. & S. 273, it is treated as a statutory lien; in Bachman v. Chrisman, 11 Harris 163, it is called "statutory dower," and described as "a defined interest in her late husband's land," and a "freehold estate."   In Kurtz's Appeal, 2 Casey 465, it is said that "whatever doubt there may be as to the nature of the widow's estate, it is certain that, so far as relates to the principal sum, it is simply a charge on the land in the nature of a lien, payable at the widow's death to the heirs of the intestate, to be recovered as personal only."

This case is criticised by Woodward, J., in Zeigler's Appeal, 11 Casey 189, and his concurrence in the decree in that case, is put expressly on the ground that the widow's interest, as ascertained by proceedings in partition under the Act of 1794, is an estate in land, and not a lien within the meaning of the Act of 1830, relative to the lien of mortgages; and it is reviewed in Schall's Appeal, 4 Wright 177, and the reasoning—but not the conclusion arrived at—is disapproved; and it is there said "that the widow's statutory dower ought not to be treated as a lien on

16 P. F. Smith—18

[Gourley *v.* Kinley.]

land, but as an interest in it. What her estate really is, is expressed in the Intestate Act of 8th April 1833, § 1: 'One-third part of the real estate for the term of her life,' and the form in which the law assigns it leaves its character unchanged." Again: "It is an estate that is given by the intestate laws, and the partition laws do not change it." But whatever difficulty there may be in defining the estate, there is no difficulty in understanding what it really and practically is. Where the widow's share is laid off by metes and bounds, she has a life estate in the portion assigned to her *as land*, which carries with it as a necessary incident the right to receive the rents and profits; but where the estate is accepted at the appraisement or sold, she has a life estate, not in any specific portion of the land, but in an equivalent share of the rents and profits of the whole estate, measured by the interest on her share of its value as ascertained by appraisement or sale. In whichever form, therefore, the assignment of her share is made, she has an estate in the land of which her husband died seised, and by force of the statute it vests in her *eo instanti* the husband dies. Her interest in his lands is in no respect like dower at common law, except that it is only for life. No writ of dower lies for the share given her by the Intestate Act where the husband dies seised and in possession: Seider *v.* Seider, 5 Wh. 208. It is true that she may maintain an action of dower if the land is in the possession of one claiming it by title adverse to the heirs and denying her right, or of one not amenable to the Orphans' Court: Galbraith *v.* Green and Wife, 13 S. & R. 85; Evans *v.* Evans, 5 Casey 277. But where the husband dies seised and in possession of real estate, she must proceed under the partition acts to have her share assigned to her. Formerly the Orphans' Court alone had jurisdiction and authority to set out and determine the portion of the widow in her husband's estate: Seider *v.* Seider, *supra;* Thomas *v.* Simpson, 3 Barr 60; or to make partition between parties who take by descent from one who died sole seised: Clawges *v.* Clawges, 2 Miles; McMichael *v.* Skilton, 1 Harris 215. But now the exclusive jurisdiction of the Orphans' Court, in the partition and valuation of the real estate of intestates, is taken away by the Act of the 21st of April 1846, Pamph. L. 426, and any of the parties interested in such estates may proceed by action of partition in the other courts of this Commonwealth having jurisdiction of the action of partition. But the concurrent jurisdiction conferred by this act is seldom or never exercised, owing to the practical inconvenience and difficulty of carrying out the provisions of the Orphans' Court Partition Act by an action of partition in courts of common-law jurisdiction.

The case of The Commonwealth *v.* Haffey, 6 Barr 348, where an action of partition was brought in the Common Pleas, and an

[Gourley v. Kinley.]

action on the recognisance to secure the share of a married woman was brought in the District Court, is a practical illustration of some of the difficulties that must be met, and of the bungling expedients that must be adopted in order to overcome them. But though the act takes away the exclusive jurisdiction of the Orphans' Court, and gives the widow the right to choose the forum in which to seek her remedy, it does not change its essential character. Her remedy for the assignment of her share is still by partition or appraisement, as provided by the Partition Act, whether the proceeding is in the Orphans' Court or in the other courts to which concurrent jurisdiction is given. She cannot join with the heirs in bringing ejectment for the land belonging to her deceased husband ; nor can she bring ejectment for her interest in the real estate of which her husband died seised: Pringle v. Gaw, 5 S. & R. 536 ; Bratton v. Mitchell, 7 Watts 113. But if she cannot bring ejectment for her interest in his estate, it does not follow that the heir can turn her out of possession, by an action of eject-ment, before any proceedings have been had for the partition of the estate. If the widow's only remedy is by partition or appraisement, under the Act of 29th March 1832 and its supplements, why should it not be the only remedy of the heir ? She has a vested estate in the land of which her husband died seised, why then should she be turned out of its possession before her portion is assigned or secured to her, as provided by the act ? If the heir wishes the exclusive possession of his share, why should he not proceed to have it set off to him under the provisions of the partition laws ? But we are not without authority on this question. This is not the first attempt that has been made to turn the widow out of possession of the real estate of which her husband died seised, without having her share assigned or secured to her. The experiment was tried in Seider v. Seider, 5 Wh. 208. There the action was brought by collateral heirs. The intestate died in 1831, seised of the real estate, leaving a widow and brothers and sisters, but no children. Upon the petition of the brothers and sisters, the Orphans' Court awarded an inquest. The inquest returned that the real estate could not be divided among the widow and legal representatives of the deceased in such manner as to give the widow the one-half, including the mansion-house, but made no appraisement. The finding of the inquest was confirmed by the Orphans' Court in 1833. The widow remained in possession after the death of her husband, and received the rents and benefits of the estate, until the trial of the ejectment in 1838, and it was held that the brothers and sisters could not maintain ejectment against her under the circumstances.

The judge, before whom the cause was tried, instructed the jury that "the widow is entitled to live in the mansion-house, and occupy the premises with the other heirs, until there is a proceed-

[Gourley *v.* Kinley.]

ing to have the land appraised, when it will not divide, and her share is ascertained and secured, as the law provides"; and in delivering the opinion of this court, Huston, J., said: " The question is, whether the brothers and sisters can by ejectment recover the whole or one-half of the estate, the widow never having resisted or denied their claim or right according to law. If they could so recover, what would be' done next? Would they bring a writ of partition at common law? The acts expressly forbid this. They must then petition the Orphans' Court, under and according to the Acts of Assembly. But they could have done this before bringing the ejectment; it was then useless; it was more, it was vexatious and oppressive, and against the express provision of the Act of 1774, which says, 'to prevent disputes, concerning the manner in which the partition of the intestate's estate may be made.'" There is no substantial difference between that case and the one now before us. It is true that there the intestate left no issue, and that the widow was entitled to the one-half of the estate, including the mansion-house. But, except as to the quantity, her interest was the same as if there had been children, and she had got the one-third: Bratton *v.* Mitchell, *supra.* If the estate cannot be divided among the collateral heirs and the widow, it may be appraised and sold. The provision that the widow shall have the mansion-house, applies only to cases where actual partition can be made: McCall's Appeal, *supra.* And where there is a widow and one child, there may be partition between them, if it can be made without prejudice to the estate: Bishop's Appeal, *supra.* It is clear, then, that there is no difference in principle between the two cases. The decision in the one must govern the other. If the heir wishes to acquire the exclusive possession of the land, he must proceed under the Partition Acts to have the widow's share ascertained and secured to her, if the land cannot be divided between them. This is the remedy which the law provides, and the Act of the 21st of March 1806 makes it his duty to pursue it.

It follows that the court should have affirmed the defendant's 2d point, and instructed the jury that the plaintiff is not entitled to recover.

Judgment reversed.