Hay *v.* Meyers, Appellant.

Argued April 11, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Charles H. Ealy,* and with him *Charles F. Uhl* of *Uhl and Ealy,* for appellant.

*John A. Berkey,* for appellee.

OPINION BY PARKER, J., July 13, 1934:

This is an action in assumpsit brought by a widow, Hannah L. Hay, to recover arrearages of dower alleged to be due to her on account of a parcel of real estate owned and possessed by her husband, William H. Hay, at the time of his death and now in possession of defendant. The case was tried by a judge without a jury and judgment was entered for the plaintiff. The defendant has appealed to this court.

The case must be disposed of on the record which is presented to us, and we will confine our attention to the errors assigned and included in the statement of questions involved as set forth in the printed briefs. There is not any dispute as to the facts proved that are material to a determination of the controversy.

William H. Hay died intestate May 16, 1890, seized and possessed of 190 acres of land in Milford

Township, Somerset County, and letters of administration were issued on his estate to A. G. Will on May 27, 1890. On January 24, 1893, the administrator presented to the orphans' court a petition for the sale of 190 acres of decedent's real estate at public sale for payment of debts. On March 11, 1893, objections to the sale were disposed of and an order was made as prayed for. The terms of sale prescribed by the court were as follows: "10% to be paid down on day of sale; balance of one-third on confirmation of sale; one-third in one year, and one-third in two years from confirmation of sale; one-third after payment of debts to remain as dower, the interest to be paid annually to Hannah Hay, widow, and after her death the principal sum to the heirs of Wm. H. Hay deceased. Deferred payment to be secured by bond and mortgage and to bear interest from confirmation of sale." Under this order the administrator sold fifty acres and seventy perches to one George J. Kimmel, for $756.56. Return was made to court and the sale confirmed absolutely. At the same time, the order was continued generally as to the sale of the remainder of the 190 acres.

On June 3, 1897, a second petition was presented to the orphans' court reciting the sale of a portion of the land and asking permission to sell the remaining part at either public or private sale, and at the same time asking that the original order be marked continued from term to term nunc pro tunc. The court granted the prayer of the petition, directed the original order to be continued and authorized the sale as prayed for. In September, 1897, the administrator returned that he had sold the premises at private sale to James M. Meyers for the sum of $2,100 to be paid $500 in hand and $200 annually from August 1, 1897. This sale was confirmed and the administrator delivered a deed to James M. Meyers dated November

1, 1897. No mention was made of a sale of the premises subject to the widow's dower in either the petition for a private sale, the return to the court, or the deed.

The administrator thereupon filed his second and final account which was offered in evidence, and therein the accountant charged himself with the proceeds of personal property, $222.40; amount received from Kimmel sale, $756.56; sale of timber on the Meyers' tract, $800; and sale to Meyers, $2,100, aggregating $3,878.96; and took credit for payments of debts and expenses of administration amounting to $2,278.96, showing a balance of $1,600 for distribution. The accountant itemized the $2,100 on account of the Meyers sale as cash, $500, "Dower of Hannah Hay, widow, $533.33⅓," and $1,066.66⅔ to be received later from Meyers in annual installments.

On November 1, 1897, the date of the deed, a judgment was confessed on a bond containing power of attorney to confess a judgment in which judgment A. G. Will, administrator of William H. Hay, was plaintiff and James M. Meyers defendant. The bond was made in favor of the administrator and its condition was as follows: "The condition of this obligation is such, that if the above bounden James M. Meyers, his heirs, executors, administrators, or any of them shall and do well and truly pay, or cause to be paid, unto Hannah L. Hay the widow of said Wm. H. Hay, deceased, her executors, administrators or assigns, the just and full sum of thirty-two dollars ($32) annually on the first day of August during the life time of said Hannah L. Hay, and at her death the principal sum of five hundred and thirty-three and 33/100 dollars ($533.33) to the heirs of said Wm. H. Hay, deceased."

James M. Meyers went into possession of the 146 acres and paid to Hannah L. Hay, widow, $32 annually until and including 1923. No further payments were made by Meyers who died on October 12, 1924.

The judgment against Meyers was revived in 1902 and on October 15, 1907, the administrator marked the judgment satisfied. Nevertheless, the executors of James M. Meyers paid the $32 per year until and including 1928. After the death of James M. Meyers, his son, Ward B. Meyers, the defendant, went into possession of the land and received a deed for the 146 acres from the other heirs of his father. He has refused to make any payments and denies that the land or he personally is liable therefor.

It is well settled in this state that a sale under an order of the orphans' court for the payment of debts bars the widow's dower. The Supreme Court, in the case of Mitchell v. Mitchell, 8 Pa. 126, 127, 128, said: "So a sale under the order of the orphans' court for the payment of debts bars the widow's dower, and this whether the party from whom the lands descends dies testate or intestate. Also a sale ordered by the orphans' court by an executor *cum testamento annexo* for the payment of debts, where there is no authority to sell in the will, has the same effect. Indeed all the cases without exception conclusively prove that dower in this state is in all respects subordinate to the rights of creditors. She is only entitled to the surplus, after satisfying their claims ...... Besides, when lands are sold by an executor under a power to sell for payment of debts, the purchaser takes the land discharged of the lien, as is held in Harris v. Spear, 1 Y. 533; 2 Dal. 293. The purchaser is not bound to look to the application of the purchase-money, but takes the land unencumbered with the lien of the debts." Also, see Helfrich v. Obermyer, 15 Pa. 113, 115; Directors of the Poor v. Royer, 43 Pa. 146; Scott v. Crosdale, 2 Dall. 127; and Killinger v. Smith's Admr., 6 S. & R. 531.

After the payment of debts the proceeds of a sale made for payment of debts must be distributed as real

estate, and the widow is entitled to receive the interest on one-third of the balance for the term of her natural life. It was held, also, in Zook's Appeal, 54 Pa. 486, 492, that if a sale of a decedent's real estate, made by order of the orphans' court for payment of debts, produces more than the debts, the law does not require the one-third of the balance to remain a charge on the estate for the widow. It follows that if such charge is made, it must be by virtue of a special order or a contract.

The balance remaining after payment of debts, in the absence of a special order is to be distributed by the administrator subject to the order of the orphans' court in such manner that the widow will receive interest on one-third of such balance for the term of her natural life, and this not as dower, which is an estate in the land and not a lien (Gourley v. Kinley, 66 Pa. 270; Luther v. Wagner, 107 Pa. 343; Diefenderfer v. Eshleman, 113 Pa. 305, 308, 6 A. 568), but as a sum of money in lieu of dower to be secured to her through the administrator. When we examine the proceedings with relation to the sale made in 1897 to Meyers, there is not a suggestion at any point in the proceedings that the sum due the widow was to remain as an estate in the land. The order, its terms, the deed, and the distribution made and confirmed in the orphans' court all negative any such assumption.

However, the appellee contends that the sale in 1897 was made subject to the conditions of the order of 1893 by reason of the fact that such order was continued nunc pro tunc. Under the Act of March 29, 1832, then in force, the power of the court as to sales for payment of debts was limited to ordering a public sale, and there was no authority for a private sale: McPherson v. Cunliff, 11 S. & R. 422; Miller v. Spear, 21 W. N. C. 554. By the Act of May 9, 1889, the

orphans' court was authorized to decree a private sale under special circumstances. It is difficult for us to view the proceeding as other than a petition for a private sale in which no attempt was made to reserve the widow's dower. The creditors were entitled to have the real estate sold discharged of the dower. The state of the law at the time and all the surrounding circumstances would indicate an intention of the parties to make a sale divested of dower and to protect the widow alone by a lien arranged upon distribution. Consequently, she depended upon her lien and not upon any estate in the land.

There are a number of other items which indicate to us a clear intention to sell the land discharged of the widow's dower as an estate in the land. If the dower was intended to be reserved as an estate in the land, why was it necessary to give a bond and enter a judgment? From whatever angle we view this case, we can come to no other conclusion than that the court intended by the order of 1897 to sell the land discharged of the widow's dower. That is what the law contemplated. She must look to the administrator or his bondsman, or to the estate of James M. Meyers, for relief if the judgment was improperly satisfied.

The judgment of the lower court is reversed and here entered for the defendant.