Ohio-Pennsylvania Joint Stock Land Bank of Cleveland, for use, Appellant, *v.* Blough et ux.

35.

Argued April 12, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Clarence L. Shaver,* with him *Daryle R. Heckman,* of *Shaver & Heckman,* and *John W. Meville* and *Masters, Crane & Willett,* for appellant.

*James B. Landis,* for appellees.

Opinion by Stadtfeld, J., July 18, 1935:

Jacob P. Speicher died intestate in 1882, survived by his widow, Barbara Speicher, now Barbara Lehman, and several children. In the same year, his administrators petitioned the Orphans' Court for an order for the sale of decedent's real estate for the payment of debts. The court authorized the sale and, on the 21st day of December, 1882, made an order providing, inter alia, "One-third to remain a lien for the widow, after the payment of debts."

On March 5, 1883, the administrators made the return to said order, setting forth that they had sold the decedent's real estate to Emanuel Eash for eleven thousand, two hundred fifty ($11,250) dollars, upon the following terms: "One-third after the debts are paid to remain a lien for the widow . . . . . ." On the same day the court confirmed the sale.

On April 4, 1883, the administrators made and delivered a deed to the purchaser for eleven thousand two hundred fifty ($11,250) dollars, reciting the Orphans' Court proceedings, but not reciting the terms of sale. On the same day, the purchaser executed his bond to the administrators in trust for the widow and heirs of the decedent in the amount of one thousand fifty ($1,-050) dollars, conditioned upon payment of the interest thereon to the widow during her life time and, at her death, the principal sum to the heirs and legal representatives of the decedent. This bond was endorsed "Dower" and contained a power of attorney to confess judgment and, on the 20th day of April, 1883, judgment was entered thereon in the Court of Common Pleas to No. 416 April Term, 1883.

On February 27, 1884, the administrators filed their first and final account, confirmed by the court on the 22nd day of May, 1884, and, in the portion relating to the real estate, set forth, "Dower to widow secured by judgment entered to No. — April Term, 1883." The

judgment entered to No. 416 April Term, 1883, was regularly revived to No. 319 February Term, 1908, but, after that date, no revivals were made.

The purchaser, Emanuel Eash, paid the interest to the widow regularly until April 1, 1909, when he conveyed the real estate, excepting coal, to Josiah J. Blough and Rachel Blough, his wife, reciting the Orphans' Court proceedings in this deed the same as they were recited in his own. Josiah J. Blough paid the interest regularly to the widow until April 1, 1926, after which he ceased paying. On that date, April 1, 1926, Josiah J. Blough and wife mortgaged the premises to the Ohio-Pennsylvania Joint Stock Land Bank of Cleveland for a debt of six thousand ($6,000) dollars.

On November 18, 1919, a revival of the judgment at No. 319 February Term, 1908, was sought in the name of the plaintiffs with notice to all *terre* tenants, but the trial of the issue raised in the affidavits of defense filed by the *terre* tenants resulted in a directed verdict in their favor.

Thereafter, on July 25, 1930, the widow brought an action of assumpsit against Josiah J. Blough and Rachel Blough, for interest in arrears on her dower charge made by the Orphans' Court order of December 21, 1882, against the land owned and possessed by the defendants, and, on July 28, 1933, obtained a judgment *de terris* thereon for five hundred eighty-three and 38/100 dollars ($583.38). On January 23, 1934, the court after argument entered a final order from which no appeal was taken.

While this case was pending in the courts, the Ohio-Pennsylvania Joint Stock Land Bank of Cleveland, to-wit, on the 8th day of September, 1931, assigned its mortgage and accompanying bond to the Union Joint Stock Land Bank of Detroit.

On April 17, 1934, the Union Joint Stock Land Bank entered judgment on its mortgage bond against Josiah

J. Blough and Rachel Blough for five thousand three hundred ninety-five and 86/100 dollars ($5,395.86), with attorney's commission, interest and costs, and the same day issued a writ of fi. fa. to No. 100 May Term, 1934.

On the 11th day of May, 1934, the real estate of the mortgagors, being substantially the same bound by the widow's charge aforesaid, was sold at Sheriff's sale to the use-mortgagee for one thousand seven hundred ($1,700) dollars. At this sale notice was given on behalf of the widow, Barbara Lehman, that the real estate offered for sale was subject to a dower charge and lien in favor of her and the heirs of Jacob P. Speicher in the principal sum of one thousand fifty ($1,050) dollars, making reference to the Orphans' Court proceedings and the proceedings at No. 365 September Term, 1930, and that said dower charge and lien would not be divested.

The purchaser paid the purchase money into court and requested the appointment of an auditor to distribute it. The court appointed Joseph Levy, Esq., auditor. The auditor, after applying sufficient to pay the taxes and costs, distributed the balance, viz., four hundred three and 27/100 ($403.27) dollars, to the widow, Barbara Lehman. The Union Joint Stock Land Bank filed exceptions to the auditor's report, which were overruled. The exceptions were renewed in court and on January 23, 1935, the court overruled the exceptions and confirmed the auditor's report. From this action of the court below the appellant has taken its appeal.

Appellant contends that Emanuel Eash, the purchaser of the real estate of Jacob P. Speicher, now deceased, sold under an order of court for the payment of the debts of said Jacob Speicher, took the land so purchased discharged of the widow's dower, and freed from any charge imposed upon the land sold. Appel-

lant further contends that the proceeds of the judicial sale of the real estate of Josiah Blough et ux., after distribution to costs and taxes should have been awarded to the claim of the execution creditor, the Union Joint Stock Land Bank of Detroit, as the first lien creditor.

The answer to these contentions depends upon the effect to be given to the terms of sale in the order of the Orphans' Court under which the real estate was sold. The order provided, inter alia, "one-third (of the proceeds) to remain a lien for the widow after the debts are paid." The return of sale by the administrator recited, inter alia, the same terms, and the sale was duly confirmed by the court. The petition for order of sale and the return of sale were recorded at length upon the Orphans' Court docket. The deed from the administrator to Emanuel Eash recited the proceedings in the Orphans' Court, although no reference was made to the terms of sale nor to the share to the widow.

Under the Intestate Act of April 8, 1833, P. L. 315 (2 Purd. 1995, 2002, 2003) it is provided, inter alia, as follows: "Sec. 1. (I) Where such intestate shall leave a widow and issue, the widow shall be entitled to one-third part of the real estate for the term of her life, and to one-third part of the personal estate absolutely. ...... Sec. 15. The shares of the estate directed by this act to be allotted to the widow, shall be in lieu and full satisfaction of her dower at common law. ...... Sec. 18. The residue of the proceeds of the sale of any real estate of an intestate made, by authority of law for the payment of debts, shall vest in the persons entitled by this act to such real estate in such proportions, and for the like interests respectively as they may have had in such real estate."

The Act of March 22, 1859, P. L. 207 (3 Purd. 3386) provides, inter alia, "Sec. 1. That in all sales of real estate under the order of the orphans' court authorized

by the laws of this Commonwealth, the court decreeing the sale shall have power to direct the terms thereof for cash, not less than one-fourth of the purchase money at the time of the confirmation of the sale, and the balance in such instalments, and at such times as, in the opinion of the court, shall be for the interest and advantage of those interested therein, requiring security to be approved by the court in at least double the value of the interest proposed to be sold, before such sale shall be ordered or made: *Provided,* That the purchase money shall be a lien on the premises sold until fully paid, according to the decree of the court."

Where there is a sale for the payment of debts, there is a conversion of the widow's interest into money, and what is termed statutory dower is barred by such sale: Mitchell v. Mitchell, 8 Pa. 126; Directors of the Poor v. Royer, 43 Pa. 146; Hay v. Meyers, 114 Pa. Superior Ct. 269, 173 A. 775.

Under the terms of sale, the one-third of the surplus, after the payment of debts, could not go into the hands either of the widow or the heirs: Zook's Appeal, 54 Pa. 486. There being no agreement to the contrary, and the orphans' court having ordered that one-third of the purchase money was to remain a lien for the widow after the debts were paid, and the sale of the land having been made and returned by the administrator subject to this condition, the interest of the widow and heirs in this fund became a fixed charge or lien upon the land, and was not divested by the sheriff's sale: Wertz's Appeal, 65 Pa. 306.

Equity will not suffer the purchaser, who received credit on the purchase money, as part of the consideration of his purchase, to avoid the contract when he took the land subject thereto: Hurst v. Spotts, 294 Pa. 221, 228, 144 A. 91; Schall's Appeal, 40 Pa. 170. In the latter case the court says, p. 176: "This decision makes the purchaser pay exactly according to his pur-

chase, instead of relieving him from $622 of his bid, and leaves the widow her claim unimpaired."

It was the duty of the purchaser at the orphans' court sale, as also those claiming through him, to take notice of the proceedings authorizing the sale, and the terms thereof, as the same were directly in the line of the title. They had record notice that the interest of the widow stood as a charge against the title, and they were bound by whatever the proceedings in that estate disclosed: Diefenderfer v. Eshleman, 113 Pa. 305, 6 A. 568. In that case the orphans' court made no order with respect to the widow's interest when the land was ordered to be sold nor was anything mentioned in the deed to the purchaser. It was held that the subsequent purchaser was bound to take notice of the orphans' court proceedings.

"Ordinarily by provision of statute, or by direction of the decree awarding money in lieu of dower, the sum payable is made a charge on the lands." 19 C. J., 587.

The auditor found that the $1,050, to secure which the judgment was given, represents a portion of the purchase money retained by the purchaser and remains unpaid. The annual interest was paid the widow by Emanuel Eash up to the time he parted with his title to the land, and Josiah J. Blough and Rachel Blough thereafter paid to the widow her annual interest up to April 1, 1926.

Appellant contends that the orphans' court sale divested the widow's dower; that thereafter the only security for the payment of the dower principal and interest was the judgment entered upon the bond or obligation executed and delivered by the original purchaser, Emanuel Eash, and the subsequent revivals of said judgment; and having allowed the lien of said last revived judgment to expire, the plaintiff is without remedy. This overlooks the proceedings in the

orphans' court resulting in the sale of said decedent's real estate upon the terms and conditions set forth in the petition, the order of sale, the return thereto, and the decree of confirmation. The power and authority of the orphans' court to make and enter this decree cannot be questioned. These proceedings were the very source and foundation of the purchaser's title and his successors in title are equally bound: Hise v. Geiger, 7 W. & S. 273; Brooks v. Smyser, 48 Pa. 86; Woodrow's Estate, 144 Pa. 198, 22 A. 810. It necessarily follows that when a part of the purchase money was charged upon the land as a dower principal, it became a statutory lien upon the premises in the hands of the purchaser and continues as such against the present owners until fully paid. The charge upon the land which results in such a case, is by the express mandate of the statute, and if a recognizance bond or other security is required by order of court or voluntarily given by the purchaser, it is merely additional security, and does not extinguish the lien created by the statute: Smith v. Danielson, 45 Pa. Superior Ct. 125.

Appellant endeavors to draw a distinction between the sale of decedent's real estate made pursuant to an order of the orphans' court for the payment of his debts and a sale made in partition proceedings. Each, of course, is dependent upon separate statutory enactments, but the principle underlying in each, in so far as the protection of the widow's interest is concerned, is the same. We have no doubt of the power of the court under the Act of Assembly, to make the order of sale and prescribe the terms in the instant case.

In the case of Wertz's Appeal, supra, SHARSWOOD, J. (1870), one-third of the balance, after the payment of the debts of the decedent, in a sale of his real estate, was secured on the land for the life of the widow. The purchaser then mortgaged the land and later suffered a judgment to be entered against him. Under this judg-

ment the land was sold and the widow claimed the fund for interest in arrears. The court, at page 307, held: "That the charge in favor of the widow of Tilghman Thompson was a fixed lien, not divested by the sheriff's sale on a junior encumbrance, is to be considered as now settled beyond any question. Indeed, it was not a matter of dispute either in the court below or here. It has been well stated as a general rule that judicial sale will not discharge an encumbrance, whether created by the law or by the parties, when the charge stands in the title, and can be discharged only by the court undertaking to administer the fund by investing it in order to fulfil the purpose of it."

Appellant relies upon Hay v. Meyers, supra, in support of its position. That case is readily distinguishable from the instant case. Quoting from the language of PARKER, J., who wrote the opinion, p. 272: "No mention was made of a sale of the premises subject to the widow's dower in either the petition for a private sale, the return to the court, or the deed," and on p. 274, "When we examine the proceedings with relation to the sale made in 1897 to Meyers, there is not a suggestion at any point in the proceedings that the sum due the widow was to remain as an estate in the land. The order, its terms, the deed, and the distribution made and confirmed in the orphans' court all negative any such assumption. ...... Under the Act of March 29, 1832, then in force, the power of the court as to sales for payment of debts was limited to ordering a public sale, and there was no authority for a private sale: ...... By the Act of May 9, 1889, the orphans' court was authorized to decree a private sale under special circumstances. It is difficult for us to view the proceeding as other than a petition for a private sale in which no attempt was made to reserve the widow's dower."

As to the distribution of the proceeds of sale, after distribution to costs and taxes. The auditor found

that Barbara Lehman, the widow of Jacob P. Speicher, deceased, brought an action of assumpsit against Josiah J. Blough and Rachel Blough, No. 365 September Term, 1930, to recover the annual interest due on the judgment originally entered to No. 416 April Term, 1884, payable April 1, 1927, 1928, 1929, and 1930, and recovered a judgment thereon July 28, 1933, for the annual interest up to April 1, 1933, with interest on the various installments from the time they became due, amounting to the sum of $583.38, with interest from April 1, 1933. These arrears of interest were divested by the sheriff's sale on the mortgage immediately subsequent to the charge and entitled to be paid out of the fund: Lauman's Appeal, 8 Pa. 473; Dickinson v. Beyer, 87 Pa. 274; Hacker v. Cozzens, 92 Pa. 461.

The balance in the hands of the sheriff after the payment of taxes, and costs incident to the audit, amounting to $403.27, which is less than the arrears of dower due, was distributed to Barbara Lehman, widow.

After a careful consideration of the very comprehensive and learned opinion of the auditor in the instant case and of the lower court in the case of Barbara Lehman v. Josiah J. Blough and Rachel Blough et al., No. 365 September Term, 1930, the suit for the recovery of the arrears of dower, we are of the opinion that the controlling questions were properly disposed of by the lower court.

The assignments of error are overruled and the decree of the lower court affirmed.